

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00336-CR

Jesse **HINOJO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2020CR10218
Honorable Stephanie R. Boyd, Judge Presiding

Opinion by:    H. Todd McCray, Justice

Sitting:    Irene Rios, Justice
Lori M. Brissette, Justice
H. Todd McCray, Justice

Delivered and Filed: June 11, 2025

AFFIRMED

Jesse Hinojo appeals his conviction for indecency with a child by sexual contact. Hinojo argues the trial court erred in denying his motion for new trial because the State violated its discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and article 39.14 of the Texas Code of Criminal Procedure. We affirm the trial court's judgment.

**BACKGROUND**

When she was 14 years old, C.H. made an outcry of sexual abuse against her older cousin Hinojo. C.H. alleged that during a three-month period when Hinojo lived in the same house he touched her breasts and vagina with his hands and penis. C.H. was 12 years old at the time of the sexual abuse. On October 19, 2020, Hinojo was indicted on one count of aggravated sexual assault of a child younger than 14 years of age by causing his male sexual organ to contact the child's female sexual organ, and one count of indecency with a child through sexual contact, to wit: touching her breast. Both offenses were alleged to have occurred on or about November 1, 2018. *See* TEX. PENAL CODE §§ 22.021(a)(1)(B), 21.11(a)(1). Hinojo pled not guilty and proceeded to a jury trial. The State presented the testimony of C.H. and the forensic interviewer from Child Safe, as well as expert testimony by Dr. Nancy Kellogg about delayed outcries and the results of C.H.'s SANE exam which were normal. Hinojo testified in his defense and denied the allegations. Hinojo's aunt who lived in the house at the time of the allegations testified she never saw anything strange.

The jury acquitted Hinojo of the aggravated sexual assault count and convicted him of the indecency with a child count. The trial court followed the jury's recommendation and sentenced Hinojo to five years' imprisonment. Hinojo filed a motion for new trial asserting the State failed to disclose potential impeachment evidence related to Dr. Kellogg in violation of *Brady* and Texas Code of Criminal Procedure article 39.14(h). After a hearing, the trial court denied Hinojo's motion for new trial. Hinojo appealed.

**DISCUSSION**

We review a trial court's ruling on a motion for new trial for an abuse of discretion, determining whether the court acted without reference to any guiding rules or principles. *State v.*

*Thomas*, 428 S.W.3d 99, 103-04 (Tex. Crim. App. 2014). In conducting our review, we view the evidence in the light most favorable to the trial court's ruling, deferring to its credibility assessments and presuming all reasonable fact findings in support of its ruling. *Id*. at 104.

The State's discovery obligations under *Brady* and article 39.14 are similar, yet distinct, with the article 39.14 duty having a broader scope than the due process duty under *Brady*. *State v. Heath*, 696 S.W.3d 677, 695 n.81 (Tex. Crim. App. 2024). Under *Brady*, upon a defendant's request, the State has a duty to disclose exculpatory information in its possession. *Id*. at 695-96. To establish reversible error under *Brady*, a defendant must show: (1) the State failed to disclose the evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to the defendant; and (3) the evidence is material in that "there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different." *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). The mere possibility that the undisclosed evidence might have helped the defense, or might have affected the trial's outcome, does not suffice to establish "materiality" in the constitutional sense. *Id*.

Under article 39.14(h), the State has a "free-standing duty," regardless of any request, to disclose to the defendant "any exculpatory, impeachment, or mitigating document, item, or information in [its] possession, custody, or control … that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." TEX. CODE CRIM. PROC. ART. 39.14(h); *Heath*, 696 S.W.3d at 695. The statute creates "an independent and continuing duty for prosecutors to disclose evidence that may be favorable to the defense even if that evidence is not 'material.'" *Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021). The scope of the State's duty under article 39.14(h) includes any "relevant" evidence tending to negate guilt or mitigate punishment regardless of materiality. *Id*. ("Relevant evidence is any evidence that has any

tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence."). To be relevant, the evidence "need not by itself prove or disprove a particular fact," but may simply "provide a small nudge toward proving or disproving some fact of consequence." *Id*.

In his motion for new trial and on appeal, Hinojo argues the State violated its duties under *Brady* and article 39.14(h) when it failed to provide defense counsel with a Memorandum of Disclosure in its possession stating that Dr. Kellogg testified in 1997-1998 sexual abuse cases that "a scar on [a] complainant's hymen was indicative of abuse" and that her opinion was rebutted by a 2007 study by the American Academy of Pediatrics which found that "torn or injured hymens do not leave scars." The Memorandum further stated, "[t]hough at the time of the trial, Dr. Kellogg provided a medically appropriate diagnosis, the medical science has since evolved" and "[i]n 2013, Dr. Kellogg told the Bexar County Criminal District Attorney's Office that her initial claims at the trial have now been shown to be outdated and that she would not testify the same way now." Hinojo asserts he was deprived of effective assistance and otherwise harmed by the State's nondisclosure of the Memorandum because he would have pursued a different trial strategy, particularly with respect to his cross-examination of Dr. Kellogg. Defense counsel attached an affidavit to his motion for new trial stating he only learned of the existence of the Memorandum by chance when he spoke to a colleague after trial. The Memorandum was admitted into evidence for purposes of the hearing.

The State conceded at the hearing that the e-discovery provided to Hinojo before trial did not include the Memorandum. The State argues the Memorandum was contained in the State's physical file and was thus available to defense counsel under the State's open-file policy as well as on the internet through a Google search of Dr. Kellogg. The State also conceded during the

hearing that the Memorandum was evidence "favorable" to Hinojo's defense. At the hearing and on appeal, the State argues the Memorandum was not, however, "material" or "relevant" to Hinojo's defense in this case.

Dr. Kellogg's trial testimony was limited to discussing her observation of the physical SANE exam performed on C.H. two years after her outcry and the "normal" results of the exam. Dr. Kellogg stated that a "normal" exam can occur when no abuse occurred, when abuse occurred without any visible injury, or when visible injury due to abuse has healed and is no longer visible; she explained a normal SANE exam is common, especially outside a 96-hour period. In answer to the prosecutor's question, "[d]id the individual exam of C.H. maintain that sexual abuse had occurred?" Dr. Kellogg replied, "yes," and explained that the "vast majority" of exams are "completely normal." Dr. Kellogg stated she considers "the whole child" in her evaluation and C.H.'s patient history described sexual abuse as having occurred. Dr. Kellogg's report noted, "patient history supports concern for sexual abuse; examination is normal." Finally, Dr. Kellogg testified that delayed outcries by children are not uncommon.

Hinojo argues the Memorandum was "material" and "relevant" information under *Brady* and article 39.14, respectively, because the State used Dr. Kellogg's testimony to bolster C.H.'s credibility in light of her delayed outcry. Hinojo asserts that if he had been able to cross-examine Dr. Kellogg using the Memorandum, the jury may have disbelieved C.H. and acquitted him on the indecency count as well.

Here, Hinojo is appealing a conviction for indecency with a child by "sexual contact." The jury charge defined the means of "sexual contact" for that count as "any touching by a person, including touching through clothing, of the breast of a child. The application paragraph similarly limited sexual contact to "touching the breast" of the child. Even if the Memorandum concerning

Dr. Kellogg's prior opinion about hymen scarring had been provided and used by defense counsel to cross-examine Dr. Kellogg, the record does not show its use would have created a reasonable probability of a different outcome or tended to make a fact of consequence more or less probable with regard to Hinojo's guilt on the "touching of the breast" offense. *See Hampton*, 86 S.W.3d at 612 (*Brady*); *see also Watkins*, 619 S.W.3d at 277 (article 39.14). Viewed in the context of this case, we cannot say that the Memorandum was either material evidence under *Brady* or relevant evidence tending to negate guilt under article 39.14.

Based on the foregoing reasons, we affirm the trial court's judgment.

H. Todd McCray, Justice

DO NOT PUBLISH